IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A CUSTOM HEATING & AIR CONDITIONING, INC., Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 16 C 2513 |
| v. | Judge Harry D. Leinenweber |
| KABBAGE, INC.; GULFCO LEASING, LLC; MICHAEL HENRY, And JOHN DOES 1-12, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are myriad Motions to Dismiss filed by
Defendant Michael Henry [ECF Nos. 54, 60, 68, 74, 75, 76, and
81]. For the reasons to follow, Defendant Henry's Motions are
granted in part. Counts II and III are dismissed for failure to
state a claim.

## I.  BACKGROUND

### A.  Factual Background

Even in this day and age, some businesses cry their wares
via fax.  Plaintiff A Custom Heating & Air Conditioning, Inc.
("Custom") alleges that, on February 17, 2016, Defendants
Kabbage, Inc. ("Kabbage"), Gulfco Leasing LLC ("Gulfco"),
Michael Henry ("Henry"), and persons unknown caused to be sent

to Custom an unsolicited fax advertising money lending services. (ECF No. 52 ("Am. Compl.") ¶¶ 1-2, 17, 22.) Custom asserts that it had no prior relationship with any Defendant and never gave anyone permission to send the fax. (*Id.* ¶ 24.) The one-page fax advertised loan products and services "offered, originated, and/or funded by all of the Defendants." (*Id.* ¶¶ 18-19.) The bottom of the faxed page states: "To Opt Out of future Faxes – Call 8446355155." (*Id.* at Ex. A.) Custom alleges that this fax contains neither a clear and conspicuous opt-out notice nor a ready and costless means for opting out, as required by 47 U.S.C. § 227(b)(2) and 47 C.F.R. § 64.1200. (*Id.* ¶ 23.)

In bringing this action on behalf of a class, Custom alleges that Defendants "sent the same facsimile to Plaintiff and more than thirty-nine other recipients without first receiving the recipients' express permission or invitation." (*Id.* ¶ 24.) Custom bases this allegation in part on its belief that the fax it received was transmitted by "WestFax," a company whose services many high-volume fax senders employ. (*Ibid.*) Custom defines the class as follows: "All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability of property, goods, or services offered by Defendants that did not contain an opt-out notice that

- 2 -

complied with federal law." (*Id.* ¶ 26.) The current proposed
class thus defines putative members without regard to whether
they consented to receiving a fax from Defendants.

Custom filed its original Complaint on February 23, 2016
and later amended it, claiming violations of the Telephone
Consumer Protection Act (the "TCPA"), the Illinois Consumer
Fraud and Deceptive Business Practices Act (the "ICFA"), and
state conversion law. Custom's TCPA count is based on
Defendants' transmitting faxes "without first obtaining
. . . prior express invitation or permission," which faxes
failed to comply with the TCPA's opt-out notice requirements.
(Am. Compl. ¶¶ 45-47.) Its state-law counts identify this same
alleged conduct as the basis for recovery. (*See, id.* ¶¶ 54-61,
62-67.) Actual damages under all three counts, according to
Custom, are its and putative class members' loss of the paper
and toner consumed in printing out the faxes, wear and tear on
their fax machines, expenses in employee time from reviewing and
routing the faxes, and (ostensibly) anguish caused by the faxes'
invasion of privacy. (*Id.* ¶ 52.) Under the TCPA, Custom seeks
statutory damages, to be trebled if the facts show that
Defendants acted willfully, along with injunctive and
declaratory relief. For its conversion count, Custom asks for
an award of "appropriate damages" along with punitive damages,

attorneys' fees, and costs.   Finally, Custom seeks declaratory
and injunctive relief, actual damages, attorneys' fees, and
costs under the ICFA.

## B.  Procedural Background

A few months after Custom filed suit, Gulfco petitioned for
Chapter 7 bankruptcy.   Henry, who is Gulfco's President, sole
shareholder, and Chief Operating Officer, agreed during meetings
with creditors that Custom's cause of action against Gulfco
would be allowed to continue after the close of bankruptcy
proceedings:

> Trustee:   [O]nce the bankruptcy is closed there's no
> discharge for the corporation.   Mr. Henry, I don't
> know if you're aware that whatever causes of action
> are against the corporation will be allowed to be
> continued. . . . You do understand that?
>
> Henry:     Yes.

(ECF No. 84 ("Pl.'s Br.") at 8.)   The Court stayed this case
pending Gulfco's bankruptcy proceeding.   (ECF No. 58.)

By March 23, 2017, the Gulfco bankruptcy had closed.   On
April 14, 2017, Custom filed a motion to re-open discovery prior
to May 3, 2017, which was the date set for the next status
conference in the case. (*See,* ECF No. 71.)   The Court was not
able to hear it until May 3, 2017, and on that date lifted the
discovery stay and set briefing schedules on Henry's Motions to
Dismiss.   (*See,* ECF Nos. 79, 80.)   But about a week before the

Court lifted the stay, on April 27, 2017, Custom served a subpoena on WestFax for production of documents. Henry filed a misconduct complaint with the Illinois Attorney Registration and Disciplinary Commission against Custom's counsel, the law firm of Bock and Hatch, concerning issuance of this subpoena during the stay. (*See,* ECF No. 85 at Ex. III.)

Henry alleges that he offered to settle Custom's claim for all that it is worth by sending to Custom a settlement proposal accompanied by a check for $1,500.00. Although counsel for Custom avers that neither his law firm nor Custom received a $1,500.00 check from Gulfco, Henry strenuously states otherwise, providing to the Court a letter dated March 1, 2016 addressed to Custom's registered agent:

> Based on this lawsuit and your claim of $1,500 owed and to spare the expense of Litigation enclosed is Check Number 1151 in the Amount of $1,500.00 drawn on Chase Bank. Your company authorized us to send you this information if you do not accept this check and terminate the Litigation we will list you [as] a creditor in the bankruptcy filing for the company. Gulfco Leasing, LLC is a Florida corporation and was dissolved on February 25, 2016 and in accordance with Florida Law this check is to settle debts of the corporation as we liquidate its assets.

(ECF No. 85 at Ex. I.)

### C. Additional Background on the Parties

Defendant Henry has a well-documented history of abusing the litigation process as a plaintiff. As the Seventh Circuit

recounted in *Henry v. United States,* 360 Fed.Appx. 654 (7th Cir. 2010), Henry filed six *pro se* cases in the Northern District of Illinois from December 2006 to October 2007 concerning his 1999 tax liability.  After receiving an unfavorable ruling in one of those cases, Henry sent threatening emails addressed to the presiding judge as well as a number of other government officials involved in his lawsuit.  In December 2007, the Northern District of Illinois Executive Committee issued an order that barred Henry from filing any new civil cases in this district but permitted him to seek modification or rescission of the order after nine months.

Likewise, counsel for Custom has few claims to litigation piety.  In a prior TCPA class action, the Seventh Circuit noted that the law firm of Bock and Hatch engaged in two forms of misconduct.  *See, Creative Montessori Learning Ctr. v. Ashford Gear LLC,* 662 F.3d 913 (7th Cir. 2011).  First, "the firm "obtain[ed] material from [a third party] on the basis of a promise of confidentiality that concealed the purpose of obtaining the material, a purpose inconsistent with maintaining confidentiality and likely to destroy [the third party's] business." *Id.* at 917.  Second, it "impl[ied] in the letter to [a putative class member] that there already was a certified class to which [it] belonged." *Ibid.*  Ultimately, the court

reversed class certification based on counsel's "demonstrated lack of integrity" and inability to instill "confidence that they would prosecute the case in the interests of the class." *Ibid.*

## II.  LEGAL STANDARDS

When considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject-matter jurisdiction exists. *Ibid.* Mootness is evaluated under Rule 12(b)(1); it involves constitutional limitations on Article III jurisdiction, which requires a live case or controversy and demands that the parties maintain a personal stake in the case "through all stages of federal juridical proceedings, trial and appellate." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998) (citations and quotations omitted). A case is moot when the plaintiff no longer "suffer[s], or [is no longer] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citation and quotations omitted). When nothing

remains to litigate, dismissal is appropriate under Rule 12(b)(1) because the plaintiff "has no remaining stake" in the case. *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994) (citation and quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim that is plausible on its face." *Adams,* 742 F.3d at 728 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim enjoys "facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A plaintiff must allege that all elements of his claim are satisfied, but cannot survive a Rule 12(b)(6) motion to dismiss by alleging only legal conclusions. *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1147 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## III. <u>DISCUSSION</u>

Henry moves to dismiss all counts of Custom's Amended Complaint based on a mélange of arguments. For reasons that will become apparent, the Court examines Count I last, ultimately denying Henry's Motions as to that count. It first

dismisses Counts II and III for failure to state a claim on which relief can be granted.

### A. Count II: Conversion

To state a conversion claim under Illinois law, a plaintiff must allege "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *General Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill. App. 1990).

For its conversion claim, Custom alleges that Defendants "improperly and unlawfully converted [its] fax machines, toner and paper to Defendants' own use" along with "employees' time." (Am. Compl. ¶ 56.) Custom allegedly "owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time" prior to Defendants' transmission of the unsolicited fax. (*Id.* ¶ 57.) By sending the fax, Defendants "permanently misappropriated the Class members' fax machines, toner, paper, and employee time to their own use." (*Id.* ¶ 58.)

The problem with Custom's allegations lies in the bedrock legal principle of *de minimis non curat lex* ("the law cares not

for trifles"). Even if a conversion claim is otherwise adequately pled, it must fail if the complained-of conversion resulted in damages that are miniscule, amounting only to mere inconveniences. *See, e.g., G.M. Sign, Inc. v. Elm Street Chiropractic*, *Ltd.,* 871 F.Supp.2d 763, 767-68 (N.D. Ill. 2012) (collecting cases). While a nominal damages award - which "presupposes a violation of sufficient gravity to merit a judgment, even if significant damages cannot be proved," *Brandt v. Bd. of Educ. of City of Chicago,* 480 F.3d 460, 465 (7th Cir. 2007) - may be properly awarded where interference with property rights "caused a significant injury," *de minimis* conversion damages are "negligible from the onset of the lawsuit" and "miniscule to the point of nonexistent." *Savanna Group v. Truan,* No. 10 C 7995, 2011 WL 703622, at *3 (N.D. Ill. Feb. 22, 2011); *Brandt,* 480 F.3d at 465. If damages are *de minimis,* "there are never significant damages available, either at the time of the conversion, the time of the lawsuit, or during trial." *Paldo Sign and Display Co. v. Topsail Sportswear, Inc.,* No. 08 C 5959, 2010 WL 276701, at *3 (N.D. Ill. Jan. 15, 2010).

In rejecting the plaintiff's claim for conversion based on unsolicited receipt of a one-page fax, the court in *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.,* 633 F.Supp.2d 610 (N.D. Ill. 2009), drew the following distinction

between nominal damages for which recovery may be had and *de minimis* damages that preclude a conversion claim. On the one hand, nominal damages "might be appropriate in a case in which the defendant converts plaintiff's valuable antique coin collection but then, during the pendency of the lawsuit, returns the coins to plaintiff unharmed"; even though such a plaintiff cannot prove significant damages resulting from temporary deprivation of his right to possess the coin collection, at the time the complaint was filed, the conversion caused an injury sufficient to sustain a judgment. *Id.* at 614-15. On the contrary, "if the defendant takes the plaintiff's inexpensive ball point pen and a notebook without his permission, uses the pen and one sheet of paper from the notebook to write a short letter, and then immediately returns the remainder of the plaintiff's supplies to him, the *de minimis* doctrine would be implicated" because the plaintiff suffered no more than negligible losses from the beginning. *Id.* at 615. It should be clear which of these situations applies to Custom's claim that Defendants' one-page unsolicited fax converted its fax machine, toner, ink, paper, and employees' time. The most Custom can hope to gain from a favorable judgment on Count II is a few pennies – a fact equally true at the time it printed the junk

fax, filed its original Complaint, and opposed Henry's Motions to Dismiss. *See, Paldo Sign,* 2010 WL 276701, at *3.

Courts hearing junk fax cases like the one at bar typically dismiss conversion claims based on the *de minimis* rationale. *See, e.g., Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.,* No. 16 C 8219, 2017 WL 2152429, at *6 (N.D. Ill. May 17, 2017) ("Any damages from the ink, toner, and paper in connection with this two-page fax are clearly *de minimis*. . . . Plaintiff's mere assertion that at least nominal damages should be awarded for the invasion of its property rights does not alter the fact that this invasion was not severe enough to justify the payment of nominal damages.") (internal citations and quotation marks omitted); *Sturdy v. Medtrak Educ. Servs. LLC,* No. 13 C 3350, 2014 WL 2727200, at *5 (C.D. Ill. June 16, 2014) ("This court agrees with the reasoning in those decisions that have applied the *de minimis* doctrine to bar conversion claims in junk fax cases.") (citations omitted); *Paldo Sign,* 2010 WL 276701, at *2-3 (same); *Garrett v. Rangle Dental Lab.,* No. 10 C 1315, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (finding that "the alleged loss is *de minimis* and can be remedied by [the plaintiff's] TCPA claim"); *Stonecrafters,* 633 F.Supp.2d at 615 ("Because plaintiff's claim for conversion of paper and toner was insufficient at its inception to merit a judgment, the *de*

*minimis* doctrine applies in this case, and no amount of damages, nominal or otherwise, would be appropriate."); *G.M. Sign,* 871 F.Supp.2d at 767-68 (same). (Although one older case, *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.,* 545 F.Supp.2d 768 (N.D. Ill. 2008) permitted a conversion claim to proceed based on receipt of a single junk fax, "cases decided over the last decade [] have expressly declined to follow *Centerline,*" and "[d]ismissing such claims under the *de minimis* maxim has been the trend in authority in this circuit." *Able Home Health,* 2017 WL 2152429 at *6 n.6.) What is more, cumulative allegations "of a putative class in a complaint cannot be used to prop up an otherwise trivial claim that is unable to stand on its own." *Stonecrafters,* 633 F.Supp.2d at 614.

The only distinction here, Custom might protest, is that Henry does not argue in these precise terms for dismissal of the conversion claim. The Court finds that Henry – who, it should be remembered, is proceeding *pro se* and is entitled to have his filings more "liberally construed," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted) – did raise variants of the *de minimis* argument in his Rule 12(b)(6) filings by arguing, *inter alia,* that Custom's class allegations impermissibly seek to transform a non-actionable injury into an

actionable one. (*See, e.g.,* ECF No. 76 at 6, 9-11; ECF No. 74 at 2, 4.) And even if Henry did not sufficiently raise these arguments, at worst the Court considers its action a *sua sponte* dismissal predicated on clear evidence from Custom's pleading. "*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997); *accord, Hoskins v. Poelstra,* 320 F.3d 761, 763 (7th Cir. 2003) (Easterbrook, J.) (noting that, irrespective of a complaint's compliance with Rule 8(a), district judges have ample authority to dismiss transparently defective suits *sua sponte,* thereby saving everyone time and legal expense) (citing *Rowe v. Shake,* 196 F.3d 778, 783 (7th Cir. 1999)).

As such, Count II for conversion is dismissed for failure to state a claim.

### B. Count III: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). To state an ICFA claim, a plaintiff must allege five elements: (1) a deceptive act or unfair practice; (2) the

defendant's intent that the plaintiff rely on the deception; (3) the deception's occurrence in the course of conduct involving trade or commerce; (4) the plaintiff's actual damages; and (5) proximate causation of the damages by the defendant's deception. *See, e.g., Blankenship v. Pushpin Holdings, LLC,* No. 14 C 6636, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015); *accord, Siegel,* 612 F.3d at 934-35.

A plaintiff may allege either deceptive or unfair conduct (or both) under the ICFA. *Siegel,* 612 F.3d at 935; *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 575 (7th Cir. 2012). Three inquiries bear on whether a business practice is unfair: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 961 (Ill. 2002) (citation omitted). Courts are tasked with making a case-by-case analysis of these factors. *Siegel,* 612 F.3d at 935.

Custom alleges for its ICFA count that Defendants' transmission of "unsolicited fax[es]" is "an unfair practice" that effectively forced "Plaintiff and the other class members to pay for Defendants' advertising campaign." (Am. Compl. ¶ 64.) According to Custom, "Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business

practice and by violating Illinois statutory public policy,"
damaging Plaintiff and other potential class members in the form
of "loss of paper, toner, ink, use of their facsimile machines,
and use of their employees' time." (*Id.* ¶¶ 65-66.) Courts
applying the ICFA largely agree that "sending unsolicited fax
advertisement[s] offends public policy." *Stonecrafters,* 633
F.Supp.2d at 616; *Mussat v. Power Liens, LLC,* No. 13 C 7853,
2014 WL 3610991, at *3 (N.D. Ill. July 21, 2014) (collecting
cases).

However, the second and third factors of *Robinson* cut
against an ICFA claim here. Although a few pre-2011 cases (such
as *Centerline,* mentioned *supra*) reach the contrary conclusion, a
burgeoning majority of courts — and all the recent decisions —
hold that receiving one- or two-page unsolicited faxes does not
trigger *Robinson*'s other two factors. *See, e.g., Able Home
Health,* 2017 WL 2152429, at *4-5 ("[T]he receipt of a single
unsolicited two-page fax — costing a couple of pennies worth of
toner and paper — [is] neither 'oppressive' nor the cause of
'substantial injury' in violation of ICFA."); *Helping Hand
Caregivers, Ltd. v. Darden Restaurants, Inc.,* No. 14 C 10127,
2015 WL 2330197, at *5 (N.D. Ill. May 14, 2015) ("[O]ne
unsolicited fax does not rise to the level of immoral,
unethical, oppressive, or unscrupulous behavior as required by

the Act.") (internal quotation marks omitted); *Mussat,* 2014 WL 3610991, at *3 (holding that the defendant's "single, one-page fax cannot be said to burden [the plaintiff] to an oppressive level" and that "[o]ne or two sheets of paper, the minimal toner, and the few seconds of a person's time expended in response to the unsolicited fax do not amount to a substantial injury"); *Sturdy,* 2014 WL 2727200, at *3 (agreeing "with courts that have found the burden imposed by the transmission of a one page fax [] not unreasonable" and finding that the "costs associated with the transmission and printing of a single fax advertisement cannot be said to cause significant harm"); *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.,* No. 11 C 6959, 2012 WL 638765, at *5-6 (N.D. Ill. Feb. 23, 2012) (dismissing allegation that junk faxes violated the ICFA); *G.M. Sign,* 871 F.Supp.2d at 770 ("Improperly interfering with one piece of [Plaintiff's] paper, a tiny amount of its toner, and a trivial amount of its employees' time is not oppressive conduct."); *Stonecrafters,* 633 F.Supp.2d at 616-17; *Rossario's Fine Jewelry, Inc. v. Paddock Pubs., Inc.,* 443 F.Supp.2d 976, 979 (N.D. Ill. 2006) ("Of the three *Robinson*-identified factors, only the 'public policy' consideration is met, and the patent inapplicability of the other two factors to [the defendant's] one-page fax advertisement heavily outweighs that one element in

the evaluation called for by *Robinson*."). As another court aptly put it, "[t]he only burden placed on [the plaintiff] was to throw the fax in the trash. This deed can hardly be classified as 'unreasonable.'" *Paldo Sign,* 2010 WL 276701, at *4. As such, Custom fails to state an actionable ICFA claim.

That Custom brings this case on behalf of a class "of more than thirty-nine people" does not change the substantial injury analysis. (Am. Compl. ¶ 29.) Even if this Court assumes that the harm to the class as a whole could be aggregated under the third *Robinson* factor, the Complaint would still not plausibly allege substantial injury. On the assumption that each unauthorized one-page fax would yield a loss of 1 cent, *accord, e.g., Able Home Health,* 2017 WL 2152429 at *5; *G.M. Sign,* 871 F.Supp.2d at 770-71, the class would have to consist of 100 persons before the harm even reached $1.00. From involvement in other similar cases, Custom's counsel knows that this does not amount to "substantial injury." *See, Urban Elevator Service, LLC v. Stryker Lubricant Distribs. Inc.,* No. 15 C 2128, 2015 WL 6736676, at *3 (N.D. Ill. Nov. 4, 2015) ("Forty people receiving a one-page fax does not amount to a 'substantial injury.' Nor is plaintiff entitled to a reading of its allegations so liberal so as to presume a class size large enough to transform an insubstantial injury into a substantial one.") (citation

omitted); *accord, Helping Hand,* 2015 WL 2330197 at *5. At
bottom, a one-page junk fax engenders only minimal harm even in
the aggregate, such that additional plaintiffs do not
transmogrify the insignificant injury into grist for the ICFA
mill. *See, e.g., Stonecrafters,* 633 F.Supp.2d at 770-71.

Therefore, because two of the three *Robinson* factors cut
strongly in Defendants' favor, their alleged conduct was not
"unfair" under the ICFA. The Court reiterates its earlier
analysis (*see,* Section III.A, *supra*) that Henry, as a *pro se*
litigant, sufficiently raises these ICFA arguments by contending
that Custom's injury is inadequate on its own to be actionable
under Illinois law and that its assertion of a 40-person class
does not create a cognizable injury. In the alternative, the
Court finds *sua sponte* dismissal appropriate anyway. As such,
the Court dismisses Count III for failure to state a claim.

## C.   Count I:  Violation of the Telephone
Consumer Protection Act

The TCPA prohibits the use of "any telephone, any facsimile
machine, computer, or other device to send, to a telephone
facsimile machine, an unsolicited advertisement." 47
U.S.C. § 227(b)(1)(C). It defines "unsolicited advertisement"
as "any material advertising the commercial availability or
quality of any property, goods, or services which is transmitted

to any person without the person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5).

The statute provides several exemptions from the general prohibition on unsolicited faxes, two of which bear potential relevance to Custom's allegations in this lawsuit. First, there is no TCPA violation if "the unsolicited advertisement is from a sender with an established business relationship with the recipient." *Id.* § 227(b)(1)(C)(i). Second, an unsolicited advertisement does not offend if it "contains a notice meeting the requirements under paragraph 2(D)." *Id.* § 227(b)(1)(C)(iii). Paragraph 2(D), in turn, provides that the notice must be "clear and conspicuous" and state "on the first page of the unsolicited advertisement" that the recipient may opt out from "future unsolicited advertisements." *Id.* § 227(b)(2)(D). To come within the ambit of paragraph 2(D), the fax must also include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." *Ibid.*

The TCPA permits private enforcement, such that a person may bring an action based on a violation of Section 227 "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3); *see also, Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 370 (2012); *Ira Holtzman, C.P.A. v.*

*Turza,* 728 F.3d 682, 688 (7th Cir. 2013). A district court has discretion to award treble damages for willful or knowing violations of the TCPA, increasing a plaintiff's potential recovery to $1,500 for each violation. 47 U.S.C. § 227(b)(3)(C)

In moving to dismiss Custom's First Amended Complaint, Henry does not challenge basic TCPA pleading requirements but instead makes several arguments at a higher level of generality. First, he argues that the Court lacks subject-matter jurisdiction over the TCPA claim. Second, Henry contends that Gulfco's bankruptcy discharge precludes Custom's claims, including its TCPA claim, against Henry. Third, Henry urges dismissal based on a recent TCPA opinion issued by the Court of Appeals for the District of Columbia Circuit. Fourth, Henry argues that Custom has failed to plead his personal involvement in sending the faxes, such that there is no plausible claim against him individually. Finally, Henry maintains that Custom's claims are moot because of a disputed past offer of settlement and his willingness to make a future "certified" payment. The Court takes these in turn.

## 1. *Jurisdiction*

First, Henry argues that the Court lacks subject-matter jurisdiction to hear this case because the requirements of diversity are not met. (*See, e.g.,* ECF No. 74 at 4; ECF No. 75

at 2-3; ECF No. 76 at 7-10.) This argument ignores the fact that the Court has original jurisdiction (concurrent with state courts) to hear Custom's private TCPA claim, which arises under federal law. 28 U.S.C. § 1331; *Mims,* 565 U.S. at 372 ("We find no convincing reason to read into the TCPA's permissive grant of jurisdiction to state courts any barrier to the U.S. district courts' exercise of the general federal-question jurisdiction they have possessed since 1875.") (citation omitted). Indeed, Custom asserts federal question jurisdiction over its TCPA claim. (Am. Compl. ¶ 15.) And Custom grounds its conversion and ICFA claims in exactly the same facts comprising its TCPA claim, such that they form part of the same case or controversy and endow the Court with supplemental jurisdiction under 28 U.S.C. § 1367(a). As a result, subject-matter jurisdiction in this case does not turn on diversity or an amount-in-controversy exceeding $75,000.

Henry's other jurisdictional argument faults Custom for not disclosing the list of at least thirty-nine other putative class members. (*See, e.g.,* ECF No. 54 at 12-13.) Yet class discovery has not commenced, and so Custom is under no obligation (and likely has no ability) to furnish Henry with this information. Custom never purported to possess this information. (*See, e.g.,* Am. Compl. ¶ 29.) And fact discovery only commenced recently

after the nearly year-long stay of the case pending Gulfco's bankruptcy. The Court can conceive of no universe in which disagreement over the timing of discovery disclosures would destroy subject-matter jurisdiction.

As such, Henry's Rule 12(b)(1) Motions to Dismiss are denied in relevant part.

### 2. *Gulfco's Bankruptcy Discharge*

Henry next proposes that Gulfco's Chapter 7 corporate bankruptcy resolved Custom's pending claims against him individually. (*See, generally,* ECF No. 68.) Little needs to be said of this argument, other than to reject it outright. Corporate debtors do not receive discharges in Chapter 7. *See,* 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless the debtor is not an individual."). A plaintiff in an action pending against a Chapter 7 debtor holds an unsecured claim and is entitled to prosecute it in district court after closure of the bankruptcy. *See, e.g., DeLeon v. Beneficial Const. Co.,* 55 F.Supp.2d 819, 824 (N.D. Ill. 1999) ("The DeLeons were listed as unsecured general creditors in that [Chapter 7] action, but because Beneficial is a corporate debtor, the closure did not discharge their claim. Thus, plaintiffs are entitled to prosecute their claim here, despite

the fact that Beneficial is insolvent and certainly judgment-proof.").

This was indeed the understanding of the parties to Gulfco's bankruptcy proceeding; the trustee unequivocally informed Henry that the claims in this litigation against Gulfco would not be discharged. What is more, Henry was involved in Gulfco's bankruptcy proceedings not as a debtor but as the company's Chief Operating Officer, President, and shareholder. Thus, even if Custom's claims against Gulfco were extinguished in bankruptcy, Henry's attempt to invoke that discharge to shroud him personally would still be a non-sequitur.

The Court thus denies Henry's Rule 12(b)(1) Motions in relevant part.

### 3. *Bais Yaakov* **and Unsolicited versus Solicited Faxes**

Next, Henry points to the D.C. Circuit's opinion in *Bais Yaakov of Spring Valley v. FCC,* 852 F.3d 1078 (D.C. Cir. 2017), arguing that Custom fails to state a claim on which relief can be granted. (*See, generally,* ECF No. 81.) That recent opinion held that the TCPA does not grant the FCC authority to require opt-out notices on *solicited* faxes. *See, Bais Yaakov,* 852 F.3d at 1083. It did not invalidate the clear statutory language requiring opt-out notices to be placed on *unsolicited* faxes.

The Court acknowledges that Custom's class definition does not distinguish between class members that gave prior permission to Defendants and those that did not. Instead, the class is defined solely with respect to whether a person received a fax from Defendants that "did not contain an opt-out notice that complied with federal law." (Am. Compl. ¶ 26.) As such, *Bais Yaakov* might spell Rule 23 doom for the proposed class should Custom seek to certify it. But *Bais Yaakov* does not bear on Custom's individual TCPA claim, which traces solely to its receipt of an unsolicited fax allegedly lacking a legally sufficient opt-out notice. (*See, e.g.,* Am. Compl. ¶ 17 ("On or about February 17, 2016 Plaintiff received an unsolicited fax advertisement."); *id.* ¶ 22 ("Plaintiff did not invite or give permission to anyone to send [the subject fax] to it.").)

Thus, the Court denies Henry's Rule 12(b)(6) Motion based on *Bais Yaakov.*

### 4. *Personal Liability of Henry*

Henry also asserts that Custom fails to "name one instance or offer any proof that Defendant Henry did anything improper." (ECF No. 54 at 14.) Part and parcel of Henry's argument is that Custom only alleges his liability as an employee of Gulfco. (*Id.* at 13.) The Court finds that Custom adequately pleads Henry's personal involvement in sending the unsolicited fax.

It is true that officers or employees are generally not liable for statutory violations based solely on their employment status. *See, e.g., Savanna Group,* 2013 WL 4734004, at *8 (finding the head of defendant's marketing division not liable under the TCPA because the allegations were based solely on his status). However, the TCPA applies to "any person," including individuals. 47 U.S.C. § 227(b)(1); *see also, Chapman v. Wagener Equities, Inc.,* No. 09 C 7299, 2014 WL 540250, at *16-18 (N.D. Ill. Feb. 11, 2014) (denying individual employee's motion to dismiss because the plaintiff alleged that he "personally approved, authorized, and participated in the scheme to broadcast unsolicited advertisements via facsimile") (internal quotation marks omitted). In fact, under the TCPA, the "sender" is "the person or entity on whose behalf the advertisement is sent," not the individual or entity that actually operates the transmitting fax machine. 21 F.C.C.R. 3787, at 3808 (*In the Matter of Rules and Regulations Implementing the [TCPA]*) (Apr. 6, 2006).

Here, the three salient facets of Henry's alleged involvement that suffice to state a claim against him under the TCPA are his alleged active participation in transmitting the fax(es), direct benefits from transmitting the fax(es), and communications with Custom on behalf of Gulfco claiming to know

exactly how and to whom Gulfco sent faxes. For example, Custom alleges that Henry "actively participated in the transmission of the subject fax advertisements, or benefitted from the transmissions." (Am. Compl. ¶ 14; *see also, id.* ¶ 18 ("Defendants sent, or caused the unsolicited fax advertisement to be sent to Plaintiff and a class of similarly-situated persons.").) Henry, along with the other Defendants, "offered, originated, and/or funded" the loan products and services being advertised and "benefit[ted]" from their sale. (*Id.* ¶¶ 19-20.) After filing its initial Complaint, Custom's counsel allegedly received a letter in which Henry stated that he "represents Gulfco" and that, by filing suit, Custom caused Kabbage to terminate its contractual relationship with Gulfco. (Am. Compl. ¶ 21(b) (noting Henry's claim of "tortuous" interference with contract).) Custom further claims that its counsel received a fax from Henry on April 6, 2016, containing an affidavit in which he averred based on personal knowledge that Gulfco only faxed customers, including Custom, from whom it had procured consent. (*Id.* ¶ 21(c).)

Although it is a close question, the Court finds that these allegations, taken in the light most favorable to Custom, plausibly allege Henry's personal involvement in Gulfco's transmission of the subject fax for purposes of TCPA liability.

*See, e.g., Creative Montessori Learning Ctr. v. Ashford Gear, LLC,* No. 09 C 3963, 2010 WL 3526691, at *3 (N.D. Ill. Sept. 2, 2010) (denying motion to dismiss as to individual defendant employee who was "involved with the day-to-day operations of Ashford Gear in general and with the specific conduct alleged in the instant complaint," including creation of the unsolicited facsimile advertisements and correspondence directly with the service who blasted the faxes to recipients).

For these reasons, Henry's Rule 12(b)(6) Motions are denied in relevant part.

### 5. *Mootness*

Henry spills lots of ink – or, perhaps more appropriately, uses a good deal of his own toner – contending that he sent Custom a $1,500.00 check from a Gulfco account that went uncashed and unreturned. (*See, e.g.,* ECF No. 54 at 3-4.) With equal measure, Henry now offers to deposit $1,500 in "certified funds" for Custom under Rule 68. (*See, id*. at 15.) The thrust of his argument is that his offer to settle Custom's TCPA claim for all it's worth – *i.e.,* for the maximum allowable amount of statutory damages – moots Custom's suit. Custom disputes ever receiving a $1,500.00 check and provides an affidavit from one of its attorneys indicating that it did not receive it.

The Court is loath to adjudicate a swearing contest, particularly at this early procedural stage and where the parties' past litigation conduct casts aspersions on the veracity of their contentions here. It suffices to note that, even if Custom *did* receive Henry's March 1, 2016 offer, its rejection of the same lends no support to Henry's mootness argument. After fourteen days, an "unaccepted offer is considered withdrawn," leaving the parties back in their original positions. *Campbell-Ewald Co. v. Gomez,* 136 S.Ct. 663, 670 (2016) (citing Fed. R. Civ. P. 68(b)). Thus, even accepting Henry's version of events, his Rule 68 offer of judgment to Custom expired on March 15, 2016 and, "once rejected, had no continuing efficacy." *Ibid.* (citing *Genesis Healthcare,* 133 S.Ct. at 1533 (Kagan, J., dissenting)). To the extent Henry is frustrated at Custom's rejection of his offer, there are other mechanisms more appropriate than a Rule 12(b)(1) motion to police plaintiffs who reject a fully compensatory offer. *See, e.g., Chapman,* 796 F.3d at 787 (discussing cost-shifting and using an offer of complete relief as an affirmative defense in the context of Rule 68). So Henry's disputed March 1, 2016 Rule 68 offer has no effect on Custom's current Article III interest in this case.

The more interesting issue concerns the effect on Custom's interest – and that of the putative class members – of statements in Henry's briefs offering to deposit $1,500.00 with the Court to settle Custom's claims. (*See, e.g.,* ECF No. 54 at 15 (offering to deposit $1,500.00 in "certified funds into whatever institution this courts *[sic]* chooses to settle this litigation").) This implicates several questions left open by *Campbell-Ewald,* which concerned only Rule 68 offers of judgment. *See, Campbell-Ewald,* 136 S.Ct. at 672 (declining to extend the holding to cases involving a direct tender or a deposit of funds with the court). Should the Court construe such statements as a Rule 67 motion to deposit with the Court the amount of $1,500.00? If so, would a ruling granting that Rule 67 motion or entering that deposit moot Custom's individual claims? If so, would it moot the class claims too?

Two district court decisions in this Circuit have answered such questions differently post-*Campbell-Ewald* – and in the context of unsolicited fax advertisements, no less. First, in *Fulton Dental, LLC v. Bisco, Inc.,* No. 15 C 11038, 2016 WL 4593825 (N.D. Ill. Sept. 2, 2016), the court held that a TCPA defendant who moved to deposit funds under Rule 67, requested judgment against it for this monetary relief and also for injunctive relief, and did so before the plaintiff filed a

motion for class certification successfully mooted both the individual plaintiff's claims and those of the class. The court held that such a tender was an "unconditional surrender backed by immediate action" as to the individual named plaintiff, leaving the court with no task but to enter judgment. *Id.* at *8. Looking to Seventh Circuit authority enshrining the filing of a certification motion as the moment when putative class members develop an interest in the case, the *Fulton Dental* court held that the class claims could have been preserved had the plaintiff merely filed an earlier motion for class certification, such as a placeholder motion to accompany its class action complaint. *Id.* at *13.

A few months later, the court in *Wendell H. Stone Co., Inc. v. Metal Partners Rebar, LLC,* 318 F.R.D. 343 (N.D. Ill. 2016), also considered the mootness implications of a TCPA defendant's motion to deposit funds under Rule 67. Although finding such a tender appropriate, the court held that the plaintiff's individual claim would not be moot even upon the actual deposit and entry of the judgment. To hold otherwise would impermissibly decapitate the class action device by separating the named plaintiff's interests from those of the putative class and, moreover, "'a defendant's proof that the plaintiff has *accepted* full compensation . . . is an affirmative defense

- 31 -

rather than a jurisdictional bar.'" *Id.* at 348 (quoting
*Chapman,* 796 F.3d at 787). With respect to the class claims,
the court emphasized that the named plaintiff had "made clear
its intent to pursue class certification" by filing its
complaint "as a class complaint" and then by moving for class
certification, albeit by placeholder motion, a week after the
defendant moved to deposit (but before issuance of the court's
opinion). *Id.* at 348-49. Thus, the defendant's Rule 67 motion
to deposit did not moot the class claims either. The court
ultimately granted the defendant's motion to deposit the funds
but denied its request to enter judgment in the plaintiff's
favor. *Id.* at 350.

Even if the two cases' disparate treatment of class claims
might be squared on the basis that the plaintiff in *Wendell*
filed a motion for class certification whereas the plaintiff in
*Fulton Dental* "*never*" did, see*,* 2016 WL 4593825 at *13 (emphasis
in original), the cases seem irreconcilable on the issue of
whether a Rule 67 tender to deposit funds moots the named
plaintiff's individual claims. Fortunately, however, the Court
need not choose between the two approaches here, because Henry's
statements in his Rule 12 briefs do not clearly constitute a
Rule 67 motion that could, on *Fulton Dental*'s rationale, moot
Custom's individual TCPA claim.

Mindful of Henry's *pro se* status, the Court does not base its finding on a superficial deficiency, such as Henry's failure to mention Rule 67, but instead on other absent hallmarks of a motion to deposit funds. There is a crucial difference between a Rule 67 motion to deposit funds – "an unconditional offer and an actual production of the money to be paid" – and a Rule 68 "offer to tender payment in the future." *Telemark Dev. Grp., Inc. v. Mengelt,* 313 F.3d 972, 978 (7th Cir. 2002); *see also, Campbell-Ewald,* 136 S.Ct. at 675 (Thomas, J., concurring) (noting that a Rule 68 settlement offer is unlike a tender because the latter is "accompanied by actually produc[ing] the sum at the time of tender in an unconditional manner"). Henry's statements in his Rule 12(b)(1) and 12(b)(6) briefs evince a desire to furnish a Rule 68 offer of judgment in the future while simultaneously denying any legal culpability with respect to Custom's allegations. Indeed, both parties seem to understand his proposal as a mere reiteration of the exact same disputed offer he claims to have made to Custom on March 1, 2016. Finally, Henry has not delivered to the clerk a copy of the order permitting deposit, as Rule 67 requires. *See,* FED. R. CIV. P. 67(a) ("The depositing party *must* deliver to the clerk a copy of the order permitting deposit.") (emphasis added).

Similarly, even if Henry's statements *could* somehow be read as a Rule 67 motion to deposit, Henry has not requested entry of a judgment in Custom's favor. After scouring his numerous Rule 12 filings, the Court finds no statements tethering to Henry's offer an explicit request that the Court enter judgment against him monetarily or in the form of an injunction against further transmission of faxes to Custom. As such, were the Court to grant the hypothetical, inchoate motion to deposit, no claims in this case would be mooted; Henry would simply have made funds available. As such, Henry still could not avail himself of the mootness procedure described in *Fulton Dental.*

In sum, Henry's statements do not constitute a Rule 67 motion for deposit of funds because they are equivocal (both in essence and in their Rule 12 milieu), resemble another iteration of his purported initial Rule 68 offer, and lack the necessary order permitting deposit that Rule 67 requires. In any event, Henry has not given the Court occasion to apply either of the Rule 67 mootness approaches described in *Fulton Dental* and *Wendell,* because he has not requested entry of an adverse judgment either as to monetary or injunctive relief. Standing alone, Henry's statements offering to pay Custom $1,500.00 in the future to settle the case moot neither Custom's individual TCPA claim nor the putative class's TCPA claims. The Court

reserves ruling on the effect of a proper Rule 67 motion accompanied by a request for an adverse judgment in favor of Custom.

For these reasons, Henry's Rule 12(b)(1) Motions to Dismiss for mootness are denied in relevant part.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants in part Defendant Henry's Motions to Dismiss [ECF Nos. 54, 60, 68, 74, 75, 76, and 81]. Counts II and III are dismissed for failure to state a claim.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 16, 2017