IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A CUSTOM HEATING & AIR CONDITIONING, INC., Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>KABBAGE, INC.; GULFCO LEASING LLC; MICHAEL HENRY; And JOHN DOES 1-12,<br><br>    Defendants. | Case No. 16 C 2513<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendant Kabbage, Inc. moves [ECF No. 104] to strike the class allegations from Plaintiff's First Amended Complaint (the "FAC")[ECF No. 52]. For the reasons stated herein, Kabbage's Motion is granted, but Plaintiff A Custom Heating & Air Conditioning, Inc., is granted leave to amend its Complaint.

### I. BACKGROUND

This opinion presumes familiarity with the factual and procedural background described at length in this Court's June 16, 2017 opinion. (Ct. Mem. Op. and Order, June 16, 2017, ECF No. 89.) The short version is this: Plaintiff A Custom Heating & Air Conditioning, Inc. ("Plaintiff") sued Defendant

Kabbage, Inc. ("Kabbage"), among others, claiming that Defendants sent or caused to be sent to Plaintiff fax advertisements in violation of the Telephone Consumer Protection Act, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227 (together, "the Act" or "the TCPA"). Plaintiff pursued other causes of action as well, but this Court dismissed them for failure to state a claim under Rule 12(b)(6). (Ct. Mem. Op. and Order, June 16, 2017.) Now, Kabbage moves the Court to strike the TCPA class action allegations from Plaintiff's FAC.

## II. LEGAL STANDARD

"The standard for evaluating motions to strike class allegations is the same as the standard for certifying a class under Rule 23." *Everett v. Baldwin,* No. 13 C 04697, 2016 WL 8711476, at *4 (N.D. Ill. Jan. 15, 2016) (citations omitted). An exhaustive class certification analysis is not necessary here. Rule 23(c)(1)(A) requires courts to determine whether to certify an action as a class action "[a]t an early practicable time." *Cholly v. Uptain Grp., Inc.,* No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017). Though a court might often find this determination not practicable at the pleading stage, "sometimes the complaint will make it clear that class certification is inappropriate." *Pumputiena v. Deutsche*

*Lufthansa, AG,* No. 16 C 4868, 2017 WL 66823, at *8 (N.D. Ill. Jan. 6, 2017). That is the case here, but not for the reason put forth by Kabbage.

### III. <u>DISCUSSION</u>

Before addressing the ultimate shortcoming of Plaintiff's proposed class, however, the Court addresses another issue raised by the parties. Namely, whether the D.C. Circuit's recent decision in *Bais Yaakov of Spring Valley v. FCC,* 852 F.3d 1078, 1079 (D.C. Cir. 2017) - which opined that the Act does not impose an opt-out notice requirement on solicited faxes and further that the Act does not empower the FCC to impose such a requirement - is binding authority in the Seventh Circuit. The Court finds that it is.

### A. **Whether *Yaakov* Controls in the Seventh Circuit**

The heart of Kabbage's objection to the class allegations is Plaintiff's proposed class definition:

> All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability of property, goods, or services offered by Defendants, that did not contain an opt-out notice that complied with federal law.

(FAC ¶ 26.) The trouble here is imprecision. Plaintiff defines its proposed class as a group of persons who received

advertisements lacking TCPA-compliant opt-out notices. Kabbage cries foul because, as the Court earlier observed, the definition fails to distinguish between those class members that gave prior permission to Defendants to receive such advertisements and those members that did not. (*See,* Ct. Mem. Op. and Order, June 16, 2017, at 3.)

According to Kabbage, this lack of definition renders Plaintiff's class "impossible to certify" in the wake of a recent D.C. Circuit opinion. In *Yaakov,* the D.C. Circuit ruled on thirteen consolidated petitions for review originally filed in multiple courts of appeals seeking to set aside the FCC's Solicited Fax Rule. *Yaakov,* 852 F.3d at 1079. Before the FCC issued the Solicited Fax Rule (the "Rule") in 2006, the TCPA required opt-out notices only for unsolicited faxes. The Rule expanded this requirement to solicited faxes as well. *See,* 47 C.F.R. § 64.1200(a)(4)(iv) (codification of the Solicited Fax Rule). But months ago, *Yaakov* stated that the Act does not empower the FCC to impose an opt-out notice requirement on solicited faxes and that the TCPA itself does not impose that requirement. *Yaakov,* 852 F.3d at 1080-83. Plaintiff claims *Yaakov* is not controlling here. Instead, Plaintiff points to *Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682 (7th Cir. 2013), in which, according to Plaintiff's telling of the case, the Seventh

Circuit held that the TCPA imposes the opt-out notice requirement for solicited faxes. (*See,* Pl.'s Resp. to Kabagge's Mot. to Strike at 14, ECF 120.)

Thus, the issue is whether, in the Seventh Circuit, opt-out notices are required even for those advertisements that are solicited. If *Yaakov* controls, then those members of Plaintiff's proposed class (if any) who received only solicited faxes have no valid claim against Defendants.

This issue has been the source of recent disagreement in this District, and two opposing camps have emerged. The first camp has held that *Turza* indeed stated that opt-out notices are required on solicited faxes and that this rule binds our District. *See, Orrington v. Scion Dental, Inc.,* No. 17-CV-00884, 2017 WL 2880900, at *2 (N.D. Ill. July 6, 2017) (holding that under binding precedent in *Turza,* "opt-out notices are still required under the TCPA, even for solicited faxes"); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.,* No. 12 C 3233, 2017 WL 2391751, at *2 (N.D. Ill. June 2, 2017) (same). The second camp has held that not only is *Yaakov* controlling in this District, but also that *Turza* does not even stand for the proposition — as Plaintiff suggests — that opt-out notices must be included on even solicited faxes. *See, Alpha Tech Pet Inc. v. LaGasse, LLC,* No. 16 C 4321, 2017 WL 5069946,

at *3 (N.D. Ill. Nov. 3, 2017) (stating that *Yaakov* is binding outside of the D.C. Circuit, and that "*Turza* does not even involve solicited faxes"); *Brodsky v. HumanaDental Ins. Co.*, No. 10-CV-03233, 2017 WL 3704824, at *4, 8-9 (N.D. Ill. Aug. 28, 2017) (same). This Court agrees with the second camp.

The D.C. Circuit is not the Seventh, and decisions of that court are not typically binding on decisions made in this District. As Kabbage correctly observes, however, *Yaakov* is not a typical case. (*See,* Kabbage's Mem. in Supp. of Mot. to Strike ("Kabbage's Mem.") at 7 n.4, ECF 105.) The *Yaakov* court ruled on thirteen consolidated petitions for review of an FCC decision concerning the Solicited Fax Rule from multiple courts of appeals, a consolidation which transformed the D.C. Circuit into the "sole forum for addressing . . . the validity of the FCC's rule." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017) (quoting *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)), *as corrected on denial of reh'g en banc* (Sept. 1, 2017). The purpose behind such consolidation — improving judicial efficiency and guaranteeing uniformity across circuits — would be undone if courts outside of D.C. continued to follow contrary precedent. *See, id.*

But as Judge John Blakey described in detail in *Brodsky v. HumanaDental Ins. Co.*, No. 10-CV-03233, 2017 WL 3704824, at *8-9 (N.D. Ill. Aug. 28, 2017), *Turza* is not contrary to *Yaakov* anyway. The relevant portions of the TCPA cited in *Turza* "never mention solicited messages at all; instead, they refer to the FCC's ability to promulgate additional rules regarding opt-out notices (such as the Solicited Fax Rule)." *Brodsky*, 2017 WL 3704824, at *8. *Turza* and *Yaakov* are not at odds over whether solicited faxes require an opt-out notice, and *Yaakov*'s holding that such notices are not required is binding in the Seventh Circuit.

**B. Kabbage's Motion to Strike**

Given that *Yaakov* controls, the Court now considers whether Plaintiff's proposed class meets the requirements of Rule 23. A party seeking class certification must prove by a preponderance of the evidence that its proposed class meets all requirements of Rule 23. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). First, Rule 23(a) sets forth four requirements: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the

representative parties will fairly and adequately protect the interests of the class (adequacy). FED. R. CIV. P. 23(a). Plaintiffs who meet this initial burden must also prove that the proposed class satisfies one of the three requirements of Rule 23(b). Where, as here, the plaintiff seeks money damages, the plaintiff must meet the requirements of Rule 23(b)(3), namely that questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to all other available methods for fair and efficient adjudication of the controversy (superiority). FED. R. CIV. P. 23(b)(3); *see, Physicians Healthsource, Inc. v. A-S Medication Sols., LLC,* 318 F.R.D. 712, 720 (N.D. Ill. 2016).

Kabbage asserts, however obliquely, that Plaintiff's proposed class cannot satisfy Rule 23(b)'s predominance requirement and so the class allegations should be struck from Plaintiff's FAC. (*See,* Kabbage's Mem. at 4.) Kabbage's argument is this: *Yaakov* killed the TCPA cause of action for any class members who received only solicited faxes, and given the ambiguity of the class definition, Plaintiff's proposed class may well contain such members. Accordingly, if Plaintiff moved to certify the proposed class, "the Court would have to individually evaluate each proposed class member to determine

whether that class member provided valid consent to be contacted" and thus received only solicited faxes. (Kabbage's Reply at 3, ECF No. 124.) Kabbage contends that such a thicket of "individual issues of consent" bars class certification. (Kabbage's Mem. at 8.) Plaintiff responds that if Kabbage contends some proposed class members gave consent to receive the alleged at-issue faxes (Kabbage's Reply at 4-7), Kabbage must produce evidence demonstrating as much (Pl.'s Resp. in Opp'n to Mot. to Strike at 4, ECF No. 120). Kabbage says this rejoinder "misses the point." (Kabbage's Reply at 3.) The Court agrees with Plaintiff.

"Courts determine whether issues of individualized consent defeat commonality and predominance in . . . TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource*, 318 F.R.D. at 725. Where the defendant only makes "vague assertions about consent . . . individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.*

Kabbage has not presented any specific evidence of consent by any class member and argues instead that the very specter of *possible* consent by any class member demands an individualized inquiry too burdensome for the Court to bear if it certifies

Plaintiff's proposed class. Case law disapproves of Kabbage's reasoning. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.,* 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) (certifying a TCPA class over defendant's predominance and commonality objections when no evidence in the record indicated that individual issues of consent would subsume common issues and noting that consent issues thus remained "hypothetical").

Kabbage's predominance argument fails, but Plaintiff's proposed class cannot be certified for another reason. In light of *Yaakov* and the ambiguity as to whether the proposed class excludes those members that solicited faxes, the proposed class cannot meet Rule 23(a)'s typicality requirement.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998). "Typicality requires 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Physicians Healthsource,* 318 F.R.D. at 723 (quoting *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division St., Inc.,* No. 11 C 6753, 2015 WL 638522, at *3 (N.D Ill. Feb. 13, 2015)) (citation omitted). Finally, "[c]ourts

faced with an overbroad class definition may deny certification for want of typicality. *McGarvey v. Citibank (S. Dakota) N.A.*, No. 95 C 123, 1995 WL 404866, at *4 (N.D. Ill. July 5, 1995).

Plaintiff alleges that it received an unsolicited fax advertisement from—or one caused to be sent by—Defendants. (FAC ¶ 17.) But if, as the proposed class definition currently allows, the class contains members who received only solicited faxes, there will not be "enough congruence" between their claims and Plaintiff's. *Physicians Healthsource,* 318 F.R.D. at 723. Indeed, there will be no congruence at all, given that post-*Yaakov*, the members that received only solicited faxes have no TCPA claim against Defendants. The class definition is thus overbroad, encompassing members who do not share a viable claim with the representative Plaintiff. If, as Plaintiff contends elsewhere in its FAC (*see* FAC ¶ 24), all of the proposed class members received only unsolicited faxes, the class definition should say so.

*Yaakov* indeed spelled doom for the Plaintiff's proposed class. But *Yaakov* is not the death knell for every class the Plaintiff might propose. Kabbage argues that any attempt by Plaintiff to amend its class definition would be "futile," (Kabbage's Reply at 1), because even re-framing the class to comply explicitly with *Yaakov* would not dispel the requirement

on the Court to make an individual inquiry into consent. But as already discussed, Kabbage cannot destroy Plaintiff's chances at class certification by summoning hypothetical consent issues while failing to produce any specific evidence demonstrating the actual existence of those issues. *G.M. Sign, Inc.*, 2009 WL 2581324, at *6.

Accordingly, striking the class action allegations is appropriate, but so is granting Plaintiff leave to amend its FAC.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Kabbage's Motion to Strike Class Allegations [ECF No. 104] is granted. Plaintiff is granted leave to amend its Complaint and its proposed class definition.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Dated: 1/18/18